IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN MARIE BALL, | : | CIVIL NO. 1:CV-09-0844 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| COUNSELOR HARTMAN, et al., | : | |
| Defendants | : | |

## MEMORANDUM

In this civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiff Dawn Marie Ball ("Ball") alleges that Defendants denied her access to the courts when she was prevented from participating in a phone hearing due to her confinement in the Restricted Housing Unit at the State Correctional Institution at Muncy, Pennsylvania (SCI-Muncy). (Doc. No. 1, Compl.) The remaining Defendants are Jeffrey Beard, Secretary at the Pennsylvania Department of Corrections ("DOC") and seven (7) SCI-Muncy employees.[1] Defendant Jill Cicero, Associate Court Administrator for the Court of Common Pleas of Northampton County Pennsylvania, was dismissed from this action on January 11, 2010. (Doc. No. 32.) Presently pending is Plaintiff's motion for order to conduct discovery in this action (Doc. No. 18), and a motion to dismiss the complaint filed by the Corrections Defendants. (Doc. No. 27.)

**I.    Background**

Ball alleges that on March 20, 2009, she was supposed to participate in a court hearing by phone with regard to a paternity testing matter she had filed in the Northampton County Court of

---

[1] The SCI-Muncy Defendants are as follows: Marirosa Lamas, Superintendent; Susan Hartman, Counselor; Jill Shepler, Deputy Superintendent; David Deibler-Gorman, Counselor Supervisor; Lieutenant Jerry Gridley; Wendy Nicholas, Classification Program Manager; and William Frantz, Corrections Unit Manager.

Common Pleas, Pennsylvania. She claims that Defendant Hartman informed her that someone had called about the hearing. Hartman informed them that because Ball was confined in the RHU, she was not permitted to take the call. (Doc. No. 1, Compl. at 2.) Hartman refused to inform Plaintiff of the name of the person that called. Plaintiff contends that this obstructed her access to the courts, and that she had previously informed Hartman about the call on March 9, 2009, and March 16, 2009. Ball further contends that she had previously informed Defendants Shepler and Nicholas about the phone hearing on March 10, 2009 and March 17, 2009. Although they told Ball they would "find out about it," they never did so. (Id.) Plaintiff also claims to have informed Defendant Gridley about the hearing on March 20, 2009, and Defendant Lamas on March 23, 2009, but each refused to look into the matter. Ball is suing Defendant Beard because "he is the policy maker of the prison." (Doc. No. 1, Compl. at 3.)

Accordingly to Ball, Hartman informed her she would have to wait until she was no longer confined in the RHU to make a call to the courts. Ball believes that she will be confined in the RHU until she "maxes out" in 2014, and at that time she will be unable to pursue the paternity issue since her son turns eighteen (18) years old in two (2) years. She maintains that because she was unable to participate in the phone hearing, her paternity case was dismissed. (Id.)

As relief, Ball seeks monetary damages in the amount of $5,000,000.00, in addition to the payment by Defendants of all child support from February 24, 1993, until the time her son graduates from college. She also seeks injunctive relief to the extent that Defendants be prevented from any further obstruction of her right to access the courts.

2

## II. Discussion

Ball alleges that the named Corrections Defendants denied her access to the courts for their role in failing to allow her to participate in a telephonic court hearing scheduled for March 20, 2009, regarding her paternity matter, due to her RHU confinement. Defendants move to dismiss the complaint on the basis that Plaintiff fails to set forth any personal involvement in the alleged violations on the part of Defendants Beard, Frantz and Deibler-Gorman, and even if she did, she fails to state a claim against any of the named Corrections Defendants.

### A. Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Under Fed. R. Civ. P. 12(b)(6), the court must accept as true the factual allegations in the complaint, and construe any inferences to be drawn from the allegations in Plaintiff's favor. See Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Marangos v. Swett, No. 08-4146, 2009 WL 1803264 (3d Cir. June 25, 2009)(citing Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain enough "facts to state a claim to relief that is plausible on its face" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and the factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citations omitted); accord Iqbal, 129 S. Ct. at 1953. The facts plead must offer more "than an unadorned, the defendant-unlawfully-harmed-me

accusation." Id., 120 S. Ct. at 1949 (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct at 1949 (citing Twombly, 550 U.S. at 556). Further, a district court should provide leave to amend "when amendment could cure the deficiency and would not be inequitable." Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002). A complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed without leave to amend. Id. at 106.

### B. Analysis

### 1. Lack of Personal Involvement

In order to state a viable civil rights claim under § 1983, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). It is well-established that civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Liability cannot be premised solely on the basis of a defendant's supervisory capacity, that is, there must be allegations that the official had knowledge or acquiesced in any purported acts of

4

constitutional mistreatment.

In the instant case, Ball only lists Defendants Frantz and Deibler-Gorman in the caption. The complaint does not contain a single allegation against them. The only mention of Defendant Beard is Plaintiff's remark that "Jeffrey Beard is being sued because he is the policy maker of the prison." (Doc. 1, Compl. at 3.)[2] Clearly, Beard is named solely due to his position as Secretary of the Department of Corrections. As there are no allegations that these Defendants participated, in any manner in the acts alleged by Plaintiff, the claims set forth against them are subject to dismissal.[3]

2. **Access to the Courts**

Plaintiff's claims against the Corrections Defendants are exclusively based upon their denying her the opportunity to participate in a March 20, 2009 hearing related to her Northampton County paternity testing matter. She claims that Defendants' actions have denied her access to the courts in violation of the United States Constitution.

Under the First and Fourteenth Amendments, prisoners retain the right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996). However, a prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. Lewis, 518 U.S. at 349. To meet this requirement, a plaintiff must show that the actions

---

[2] Unless otherwise noted, when citing to the record the Court will use the document and page numbers assigned by the Electronic Case Filing System (ECF).

[3] While Plaintiff attempts to set forth personal involvement with respect to these Defendants in her brief in opposition to the motion to dismiss (Doc. No. 31), many of her allegations amount to nothing more than allegations against Defendants in their supervisory capacities. However, even if Plaintiff could set forth a viable claim of personal involvement, she still fails to state an access to the courts claim against Defendants for the reasons that follow in the next section of this Memorandum.

of the prison officials hindered the prisoner's efforts to pursue a nonfrivolous claim.  See

Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008); Christopher v. Harbury, 536 U.S. 403, 415

(2002).  Further, "the injury requirement is not satisfied by just any type of frustrated legal

claim."  Lewis, 518 U.S. at 354.  The right of access to the courts "does not guarantee inmates

the wherewithal to transform themselves into litigating engines capable of filing everything from

shareholder derivative actions to slip-and-fall claims," and thus the right is limited to

safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in

order to challenge the conditions of their confinement."  Id. at 355.  "Impairment of any *other*

litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of

conviction and incarceration."  Lewis, 518 U.S. at 349.

In the instant case, Defendants move to dismiss the complaint in that Plaintiff's denial of

access claim relates to her inability to participate in a phone hearing regarding a paternity testing

matter she is pursuing.  The question of paternity is neither a challenge to her conviction or a

claim related to the conditions of her confinement.  As such, Plaintiff has failed to establish a

requisite element of her claim under Lewis.[4]

More importantly, even if Plaintiff had established that she had been frustrated by

Defendants in pursuing a challenge to her conviction or a claim related to her conditions of

confinement, she clearly fails to establish actual injury.  As Defendants point out, Plaintiff

---

[4]  The Court notes that this is not a case where the underlying phone hearing in issue involved a matter concerning Plaintiff's parental rights, and the risk that said rights could have been altered.  In such a case, it is well-established that a person has a fundamental liberty interest in maintaining a parental relationship with his or her children, and to this extent, the Supreme Court has found due process must be afforded to an individual who is having his parental rights challenged.  See Santosky v. Kramer, 455 U.S. 745, 752-54 (1982); Quilloin v. Walcott, 434 US. 246, 255 (1978).

submits evidence that the phone hearing she challenges scheduled for March 20, 2009, was previously cancelled, and that Plaintiff was informed it would be rescheduled based upon her availability. (Doc. No. 20, Ex. 1.) Based on the foregoing, it is clear that Plaintiff offers no evidence that she has suffered any actual injury in this matter. To the contrary, she herself submits documentation that the challenged phone hearing had been canceled prior to March 20, 2009, and can be rescheduled by Plaintiff for a later date. Accordingly, Defendants' motion to dismiss will be granted.[5] An appropriate Order follows.

---

[5] In light of the Court's ruling, Plaintiff's outstanding Motion for Order to conduct discovery in this matter (Doc. No. 18) will be denied as moot

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| DAWN MARIE BALL, | : | CIVIL NO. 1:CV-09-0844 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| COUNSELOR HARTMAN, et al., | : | |
| Defendants | : | |

## ORDER

**AND NOW, THEREFORE, THIS 16th DAY OF FEBRUARY, 2010,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiff's Motion for Order (Doc. No. 18) is **denied as moot.**

2. The motion to dismiss filed by the Corrections Defendants (Doc. No. 27) is **granted.** All claims set forth against the remaining Defendants in this action are dismissed in their entirety.

3. The Clerk of Court is directed to **close this case**.

4. Any appeal from this Order is deemed frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                              s/ Yvette Kane
                                              YVETTE KANE, Chief Judge
                                              Middle District of Pennsylvania